IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

AASK LENDING, LLC, *et al.*,

Plaintiffs,

v. Civil Action No. 2:25-cv-604

SATHTHIA LINGAN, *et al.*,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Plaintiffs AASK Lending, LLC ("AASK") and Norm Gonzalez (collectively, "Plaintiffs") allege that they were victims of a fraudulent investment scheme involving luxury automobiles. Plaintiffs invested substantial money in the scheme. After Plaintiffs' loans defaulted, they brought suit against a number of defendants. Although many of these defendants have not appeared in this litigation,[1] one defendant, Rhyan Finch, has appeared and moved for summary judgment. Dkt. No. 89. Plaintiffs allege that Finch promoted the fraudulent scheme to would-be investors, monitored its financials, and generally worked to ensure its success. Finch's Motion for Summary Judgment contends that the evidence demonstrates that he was a victim rather than a participant in the fraud. For the reasons stated below, Finch's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

[1] The non-appearing defendants include Saththia Lingan; Alperta Financial, LLC; Strada Luxury Exotics LLC; and La Stalla Exotics LLC. Defendants VB Capital Group LLC and Brookelle Sabir have appeared—but this matter is stayed with respect to those defendants due to ongoing bankruptcy proceedings. Dkt. No. 83.

## I. BACKGROUND

The facts listed in this section are undisputed unless otherwise noted. Saththia Lingan, operating through Alperta Financial, LLC ("Alperta"), sought individuals to provide short-term loans to Alperta. Dkt. No. 92, at 2; Dkt. No. 94, at 1–2. Lingan told investors that these loans would be used to purchase luxury cars at wholesale, and that the cars would then be resold—making a profit for both Lingan and the investor. Dkt. No. 92, at 2; Dkt. No. 94, at 1–2.

Plaintiffs became aware of this investment opportunity in 2024, and they spoke about the opportunity with Finch on various occasions between November 2024 and January 2025. Dkt. No. 92 ¶¶ 5, 16, 17, 37; Dkt. No. 94, at 24. In those conversations, Finch promoted the opportunity to Plaintiffs and assured them of the legitimacy of Lingan's operation. Dkt. No. 92 ¶¶ 5, 16, 17, 37; Dkt. No. 94, at 24. Plaintiffs later made several loans to Lingan that returned the expected profit. Dkt. No. 92 ¶ 7; Dkt. No. 94, at 5.[2]

Then, in April and May of 2025, Plaintiffs made the five loans at issue in this case. Dkt. No. 92, at 7. AASK, an limited liability corporation with two members, Sanjay Kapoor and Amitee Amin, funded four of these loans, and Norm Gonzalez funded the fifth. *Id.* Plaintiffs dealt exclusively with Lingan with respect to these loans, and Finch received no referral fee. Dkt. No. 92 ¶¶ 15–30, 38; Dkt. No. 94, at 10, 12.[3] These five loans were never repaid as promised.

---

[2] Plaintiffs dispute the paragraph in which Finch asserts that Alperta had returned the expected profit on Plaintiffs' prior loans, but they offer no evidence to the contrary. Dkt. No. 94, at 5. The Court therefore treats Finch's assertion as conceded. *See* E.D. Va. Local Civil Rule 56(B) (requiring that an opposing party must cite "the parts of the record relied on to support the facts alleged to be in dispute").

[3] Plaintiffs dispute the paragraph in which Finch asserts that he received no referral fee in connection to the loans at issue, but they dispute it on unrelated grounds and offer no evidence to the contrary, leaving the fact that Finch received no referral fee conceded. Dkt. No. 94, at 12; *see also* E.D. Va. Local Civil Rule 56(B).

In their Second Amended Complaint, Plaintiffs assert several claims against Finch: violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), specifically 18 U.S.C. § 1962(c), by participating, directly or indirectly, in the conduct of an enterprise's affairs through a pattern of racketeering activity (Count 1); RICO conspiracy, in violation of 18 U.S.C. § 1962(d) (Count 2); Virginia common law civil conspiracy (Count 3); and unjust enrichment (Count 12). Dkt. No. 86, at 14–28, 36–37. AASK alone further alleges violation of Virginia's civil conspiracy statute, Va. Code Ann. § 18.2-500 (Count 4); fraud in the inducement (Count 5); and negligent misrepresentation (Count 6). Dkt. No. 86, at 29–32.

Finch filed a Motion for Summary Judgment, Dkt. No. 89. Plaintiffs responded, Dkt. No. 94, and Finch replied, Dkt. No. 95. Accordingly, Finch's Motion for Summary Judgment is ripe for adjudication.[4]

## II. LEGAL STANDARD

A party may move for summary judgment on a claim or defense, or part of a claim or defense. Fed. R. Civ. P. 56(a). The district court will "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A fact is material if "its existence or non-existence would affect disposition of the case under applicable law." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012) (citations omitted).

---

[4] The Court has determined that a hearing is unnecessary. E.D. Va. Loc. Civ. R. 7(J).

The movant bears the initial burden of demonstrating that there is no genuine issue of material fact. *Wai Man Tom*, 980 F.3d at 1037 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The nonmoving party must then establish that specific, material facts exist which would give rise to a genuine issue. *Id*. However, the "mere existence of a scintilla of evidence" is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252. In reaching its decision, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted).

## III. ANALYSIS

### A. The RICO Claims (Counts 1 and 2)

Counts 1 alleges that Finch violated § 1962(c) of RICO and Count 2 alleges he conspired to violate § 1962(c). A defendant is liable for violation of § 1962(c) when they (1) participate, directly or indirectly, in the conduct of an enterprise's affairs (2) through a pattern of racketeering activity. 18 U.S.C. § 1962(c); *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). Importantly, the defendant must have "some part in directing" the enterprise's affairs. *Id.* at 179. This is not to say that the defendant must wield ultimate control over the enterprise—indeed, the *Reves* court noted that "lower rung participants in [an] enterprise who are under the direction of upper management" also have "some part in directing" an enterprise. *Id.* at 179, 184. Following *Reves*, courts in this Circuit have distinguished between individuals who merely provide advisory or professional services to an enterprise and individuals who are "significant, active, independent participants" in an enterprise. *See, e.g., Smithfield Foods, Inc. v. United Food & Com. Workers Int'l Union*, 633 F. Supp. 2d 214, 231 (E.D. Va. 2008). A defendant is liable for RICO conspiracy when they

knowingly and intentionally agree with another person to violate any of the substantive RICO offenses. 18 U.S.C. § 1962(d); *United States v. Cornell*, 780 F.3d 616, 621 (4th Cir. 2015).

In his Motion for Summary Judgment, Finch argues that he is entitled to summary judgment on Counts 1 and 2 because the evidence demonstrates that Finch was himself a victim of the scheme, not someone who had "some part in directing" it, and relatedly, Finch never knowingly and intentionally agreed with Lingan to engage in the fraudulent scheme. Dkt. No. 92, at 8–10. In support of this contention, Finch notes that none of the many texts between himself and Lingan expressly indicate that Finch had knowledge of the scheme's unlawful nature, and some of the texts tend to suggest Finch believed the scheme was legitimate. *Id.* at 9. Finch also points to evidence that he himself lost hundreds of thousands of dollars to the scheme. *Id.* Finally, Finch notes that there is evidence demonstrating that, when the nature of the scheme became clear, Finch took action to prevent others from investing further in the scheme. *Id.* at 9–10.

Plaintiffs counter by pointing to a wealth of circumstantial evidence that would permit a reasonable juror to infer that Finch both knowingly agreed to engage in the scheme and had some part in directing it. Dkt. No. 94, at 14–21. Among other things, Plaintiffs point to evidence establishing that Finch (1) exchanged thousands of texts with Lingan regarding the scheme, Dkt. No. 94, at 5–9; (2) was paid for attracting investors to the scheme, *id.* at 20; (3) developed a sub-referral model whereby he was paid when people he recruited brought in further investors, which Lingan explicitly referred to as Finch helping with "organizing and managing" the operation, *id.* 20–21; Dkt. No. 94-9, at 11; (4) actively strategized with Lingan about recruiting investors and scaling the operation, Dkt. No. 94, at 21; and (5) explicitly discussed with Lingan the possibility of Finch and his daughter having still more involvement in the operation and "running [its] backend" by handling funding, shipping, and payouts. *Id.*

In summary, Finch has presented some evidence which tends to show that he was an unwitting victim, and Plaintiffs have countered with evidence showing Finch's extensive involvement with Lingan and the overall scheme—arguing that this suggests Finch was aware of the scheme's fraudulent nature. This sort of dispute regarding Finch's state of mind is exactly the sort of genuine dispute of material fact that the Court will not wade into at the summary judgment stage. Indeed, the Court is especially reluctant to wade into factual disputes that involve a defendant's state of mind. *See Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). ("[S]ummary judgment is seldom appropriate in cases wherein particular states of mind are decisive as elements of [a] claim or defense."). Resolving all inferences in favor of the Plaintiffs, there exist genuine disputes of material fact as to whether Finch had some part in directing the fraudulent scheme, and whether Finch knowingly and intentionally agreed to engage in the fraudulent scheme with Lingan. Finch's Motion for Summary Judgment is accordingly DENIED with respect to Counts 1 and 2.

**B. Virginia Common Law and Statutory Conspiracy (Counts 3 & 4)**

Counts 3 and 4 allege that Finch is liable for conspiracy under both Virginia common law and Virginia statutory law. To establish liability for common law conspiracy, Plaintiffs must prove that Finch intentionally conspired to accomplish an unlawful purpose, or else intentionally conspired to accomplish a lawful purpose by unlawful means. *Hechler Chevrolet, Inc. v. Gen. Motors Corp.*, 337 S.E.2d 744, 748 (Va. 1985). Similarly, to establish liability for civil conspiracy, AASK must prove that Finch acted "intentionally, purposefully, and without lawful justification" with respect to the conspiracy. *Simmons v. Miller*, 544 S.E.2d 666, 677 (Va. 2001).

In his Motion for Summary Judgment, Finch argues that he is entitled to summary judgment on these counts because, again, he was merely an unwitting victim. Dkt. No. 92, at 10.

Finch acknowledges that this is the same argument he raises on the RICO Counts. *Id.* Having already found a genuine dispute of material fact with respect to whether Finch knowingly and intentionally engaged in a fraudulent scheme with Lingan, the Court DENIES Finch's Motion for Summary Judgment with respect to Counts 3 and 4.

**C. Fraud in the Inducement (Count 5)**

Count 5 alleges that Finch is liable to AASK for fraud in the inducement. To establish liability for fraud in the inducement, AASK must prove "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by [AASK], and (6) resulting damage to [AASK]." *Thompson v. Bacon*, 425 S.E.2d 512, 514 (Va. 1993).

As discussed above, it is undisputed that Finch made statements to AASK promoting the legitimacy and appeal of Lingan's operation between November 2024 and January 2025. Dkt. No. 92, at 11–12; Dkt. No. 94, at 24. AASK relies on the deposition of Kapoor to establish that Finch "promoted Lingan and the vehicle transactions, represented his own success with the program, and vouched for its legitimacy." Dkt. No. 94, at 24. Subsequent to these representations from Finch, AASK invested in Lingan's operation in April of 2025. In his Motion for Summary Judgment, Finch argues that he is entitled to summary judgment because there is no evidence demonstrating that the investment scheme was fraudulent when Finch made the relevant statements to AASK, and therefore no evidence that Finch's statements were false; to the extent he did make false statements, he did not do so knowingly and intentionally; and there is no evidence that AASK relied on any such statements. *See* Dkt. No. 92, at 11–13.

As to the first argument, there is a genuine dispute of material fact as to whether the scheme was fraudulent in December 2024. Finch suggests that the scheme might have been legitimate at the outset, only "evolv[ing] into a Ponzi scheme" in 2025. *Id.* at 12. While this is a plausible

inference, so too is the inference that the scheme was fraudulent from inception. At the summary judgment stage, all reasonable inferences are resolved in favor of the non-moving party—and so there is a genuine dispute of material fact as to whether the scheme was fraudulent when Finch made the relevant representations to AASK.

The second argument deals with Finch's state of mind, and it is therefore disposed of by the Court's prior determination that there is a genuine dispute of material fact with respect to whether Finch knowingly and intentionally agreed to participate in the scheme with Lingan. This leaves only Finch's third argument: that there is no evidence of reliance. In support of this argument, Finch points to evidence establishing that the relevant representations were made months prior to AASK making the loans at issue and AASK did not tell Finch that they intended to make the loans at issue. *Id.* at 12–13.

But Finch conceives of reliance too narrowly. AASK points to evidence that Finch promoted investment in the scheme to Kapoor, and Kapoor has alleged that he relied on Finch's statements when AASK later invested. Dkt. No. 94, at 24. Resolving all inferences in favor of the nonmoving party, the Court concludes that there is a genuine dispute of material fact on the question of reliance. Finch's Motion for Summary Judgment is therefore DENIED as to Count 5.

**D. Negligent Misrepresentation (Count 6)**

Count 6 alleges that Finch is liable to AASK for negligent misrepresentation. Negligent misrepresentation has all the same elements as fraud in the inducement, listed above—except that the misrepresentation of material fact is made "innocently or negligently." *Evaluation Rsch. Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994).

In his Motion for Summary Judgment, Finch argues he is entitled to summary judgment on Count 6 because there is no evidence demonstrating that the scheme was fraudulent when Finch

made the relevant statements to AASK, and Finch's statements therefore were not false, and there is no evidence that AASK relied on any such statements. Dkt. No. 92, at 12–13. The Court has already found that genuine disputes of material fact exist with respect to these arguments. The Court therefore DENIES Finch's Motion for Summary Judgment with respect to Count 6.

**E. Unjust Enrichment (Count 12)**

Count 12 alleges that Finch is liable to Plaintiffs for unjust enrichment. To establish liability for unjust enrichment, Plaintiffs must prove that (1) Plaintiffs conferred a benefit on Finch, (2) Finch knew of the benefit and should reasonably have expected to repay it, and (3) Finch accepted or retained the benefit without paying for its value. *Schmidt v. Household Fin. Corp. II*, 661 S.E.2d 834, 838 (Va. 2008).

In his Motion for Summary Judgment, Finch argues that he is entitled to summary judgment on Count 12 because there is simply no evidence that Finch received any benefit in connection to the loans at issue in this case. Dkt. No. 92, at 14. Plaintiffs counter by pointing out that Finch received a $5,000-per-transaction referral fee in connection with several loans AASK made prior to the loans at issue in this case. Dkt. No. 94, at 28. But, as discussed above, Plaintiffs also concede that Finch did not receive a referral fee for the loans at issue, and Plaintiffs point to no other evidence suggesting that the loans at issue benefited Finch. Plaintiffs need not show that money directly transferred between themselves and Finch to prove a claim for unjust enrichment—but they do have to point to some benefit that was actually conferred on Finch. Here, where no evidence of any such benefit has been provided, there is no genuine dispute of material fact with respect to unjust enrichment and Finch is entitled to summary judgment. Finch's Motion for Summary Judgment is therefore GRANTED as to Count 12.

## IV. CONCLUSION

For the reasons stated above, Finch's Motion for Summary Judgment, Dkt. No. 89, is GRANTED with respect to Count 12 and otherwise DENIED.

It is so ORDERED.

/s/

Elizabeth W. Hanes
United States District Judge

Norfolk, Virginia
Date: November 4, 2026